January 8th, 2022
U.S. District Court, Southern District of New York          Case No.21 Civ.03208 (PAE)(SLC)

      Re: SEAN P. FAHEY and DIETERICH GRAY, Plaintiffs
      vs.
      BREAKTHROUGH FILMS & TELEVISION, INC.,
      BREAKTHROUGH ENTERTAINMENT, IRA LEVY
      and LAUREN LEINBURD,                    Defendants.

MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

      The Defendants' second "motion to dismiss" raises a rash of factual disputes that underscore the need for fact discovery to get under way in this case, in order to resolve issues the Defendants have put in play. In reality, defendants' latest filings are a motion for summary judgement. But even if Defendants' motion for summary judgement were proper (and it is not), Defendants' second motion repeatedly highlights factual issues by submitting declarations that do nothing more than gainsay allegations in the complaint. Of course, on a motion to dismiss, all factual allegations set forth in a complaint must be accepted as true.

      It is important to emphasize that the Plaintiffs' Amended Complaint is a thorough document with many exhibits cited which reveal:

      A.      Federal Copyright Infringement Against All Defendants, On information and belief, Defendants' infringing conduct alleged was and continues to be willful and with full knowledge of Plaintiffs' rights in The Bishop Sheen Project  (*see* Amended Complaint p. 31, paragraph 150 - 156).

      B.      Defamation / Libel Against All Defendants, where Defendants made false statements about their ownership rights in the Fraser Materials and the terms of the Pitch Option Agreement between plaintiffs and BFTV. In disseminating the statements contained in the February 26, 2020 letter to The Sheen Center, Defendants acted in a grossly irresponsible manner without due consideration of Plaintiffs' rights to pursue development of the Sheen Series after the expiration of the Pitch Option Agreement on August 31, 2017  (*see* Amended Complaint p. 31, paragraph 157 - 159).

C. Breach of Contract Against All Defendants, where Defendants have materially breached the terms and representations under the Option Agreement (*see* Amended Complaint p. 32, paragraph 160 - 171).

D. Tortious Interference with Existing Contract Against All Defendants, where On February 26, 2020, Executive Director of the Sheen Center, David DiCerto, received a letter from BFTV's Lauren Leinburd, wrongfully asserting that the Sheen Series pitch Plaintiffs' were awarded the fellowship to develop at the Sheen Center was potentially infringing on the intellectual property BFTV allegedly maintained in the Fraser Materials. As a direct result of BFTV's letter, The Sheen Center exercised its rights under their contract to terminate Plaintiffs' Artist-in-Residence agreement with The Sheen Center (*see* Amended Complaint p. 34, paragraph 172 - 182).

E. Tortious Interference with Business Relations Against All Defendants, where Defendants have falsely claimed intellectual property rights in the Fraser Materials and reached out to The Sheen Center in another attempt to prevent the true copyright owners of the Bishop Sheen Project from pursuing any future development of the Sheen Series (*see* Amended Complaint p. 36, paragraph 183 - 186).

F. Tortious Interference with Prospective Economic Advantage Against All Defendants, whereby Defendants falsely claiming that Plaintiffs are infringing on BFTV's copyright in the Fraser Material, Defendants have intentionally and wrongfully interfered with and will continue to intentionally interfere with and disrupt Plaintiffs' prospective business relations with TV/movie producers and executives interested in pursuing further development of The Sheen Series (*see* Amended Complaint p. 37, paragraph 187 - 192).

G. Common Law Unfair Competition Against All Defendants, on information and belief, Defendants intentionally and in bad faith appropriated Plaintiffs' labor with the intent to hold itself out as being the copyright owners of the

Sheen Series pitch. As such, defendants have committed unfair competition under the common law of this State (*see* Amended Complaint p. 38, paragraph 193 - 199).

H. Misrepresentation in Commercial Advertising or Promotion Against All Defendants, where Defendants have made literally false and/or misleading statements falsely

holding themselves out as the copyright owners of materials derived from Plaintiffs' Sheen Project script and falsely claiming that Plaintiffs' script infringes on protectable elements in the Fraser Materials (*see* Amended Complaint p. 39, paragraph 200 - 206).

The Defendants' second motion to dismiss is improper, therefore Plaintiffs respectfully request that the Defendants' second motion to dismiss be denied. Please review materials submitted in this document which highlight many of the allegations made by Defendants in their second motion to dismiss, which is in response to the Plaintiffs' Amended Complaint.

Respectfully submitted,

*[signatures]*

Sean Fahey and Dieterich Gray  *Pro se* [Plaintiffs]
5213 Black Friars Ln.
Minnetonka MN 55345
312-324-0372
seanpfahey76@gmail.com

**IN RESPONSE TO DEFENDANTS' MEMORANDUM OF LAW**

It is important to note: the court is not obligated to consider the claims in the Defendants' motion to dismiss as true. However, the court should consider the Plaintiffs' complaints to be true, unless proven otherwise in a court of law.

1. With regard to personal jurisdiction, Defendants argue a motion to dismiss citing: *DiStefano v. Carozzi N. Am., Inc*. 286 F.3d 81 (2d Cir. 2001), and *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez* 171 F.3d 779 (2d Cir. 1999), stating, "Prior to discovery, plaintiff must only make a prima facie showing of jurisdiction to defeat a motion to dismiss."

2. This court has personal jurisdiction of the copyright claims pursuant to FRCP 4(k)(2) because plaintiffs served Defendants with the summons and complaint. Personal jurisdiction in this district is proper because this court has original jurisdiction over Plaintiffs' federal copyright claim and service of summons establishes personal jurisdiction where the Defendant is not otherwise subject to any state's general jurisdiction. (*see* Amended Complaint p.4 paragraph 14).

3. If the Defendants are correct that they are not subject to General Jurisdiction in the State of New York, then this rule applies because there would not be General Jurisdiction in any state. However, we've uncovered many examples of Defendants' working in the State of New York, and have compelling evidence regarding Defendants opening an office in New York. Please review these examples of Breakthrough Entertainment and Ira Levy doing business in New York:

    A. "Breakthrough Entertainment Opens New York City Office"

**https://realscreen.com/2015/04/08/breakthrough-entertainment-opens-new-york-city-office/**

    B. The above mentioned office is helmed by Breakthrough Entertainment and Head of Alternative Programming for the USA, Beth Fraikorn. Supporting Articles:

**https://variety.com/exec/beth-fraikorn/**

**https://tbivision.com/tag/beth-fraikorn/**

C. The above evidence of a functioning New York office for Breakthrough Entertainment disproves and makes false the notion the Defendants set forth stating Defendants do not do business in New York. This makes more needed the process of fact discovery to ascertain the scope with which Defendants operate and do business in New York.

D. "Streets of the World" a co-production between Breakthrough Films and Television Inc. and Double Exposure Inc. produced in association with Discovery Communications International, the Travel Channel, and History Television Inc., all located in New York. The production contains episodes that deal with New York.

**https://www.c21media.net/news/breakthrough-opens-us-office/**

E. Supporting Articles regarding the New York Office:

**https://apnews.com/article/9bbebb43bf284495bc761cc32865604a**

**https://en.wikipedia.org/wiki/Travel_Channel**

**https://headquartersof.com/history-channel-corporate-office/**

F. Further Examples of business co-productions and collaborations in New York:

G. Anne of Green Gables (2016), Produced by Breakthrough Entertainment, In association with Cutting Room Recording Studios, a business located in New York.

**https://pro.imdb.com/title/tt4820224/companycredits**

**https://pro.imdb.com/company/co0208552/?ref_=tt_co_other**

H. The Adventures of Napkin Man (2013–2017), Produced by Breakthrough Entertainment and Executive Producer Ira Levy, With production company Little Airplane Productions - headquartered in New York

**https://pro.imdb.com/title/tt3673456/companycredits**

I. The Big Fun Crafty Show (2018– ), Produced by Breakthrough Entertainment and Executive Producer Ira Levy, Distributed by Universal Kids - headquartered in New York

**https://pro.imdb.com/title/tt8559392/companycredits**

J. Antisocial 2 (2015), Produced by Breakthrough Entertainment and Executive Producer Ira Levy, Distributed by Ammo Content - headquartered in New York

**https://pro.imdb.com/title/tt4004084/companycredits**

K.  Death Valley (2021), Produced by Breakthrough Entertainment and Executive Producer Ira Levy, Distributed by Shudder - headquartered in New York

https://pro.imdb.com/title/tt14623762/companycredits

4. Personal jurisdiction is also proper, and warrants fact discovery, under New York's long-arm statute, [CPLR] § 302, because, on information and belief, in an April 2015 article titled, "Breakthrough opens New York Office," it states that: "Canada-based producer and distributor Breakthrough Entertainment has opened up an office in New York." (*see* Amended Complaint, Exhibit-307). Furthermore, in a May 2020, article titled, "Feature: Exclusive interview with Breakthrough Entertainment's Nat Abraham," Business Review Canada states, when writing about Nat Abraham head of distribution at Breakthrough Entertainment that, "Beyond Canada, Abraham has also initiated license commitments with major US networks and cable channels including Discovery, CBS, Lifetime and A&E." The CBS broadcasting network is located on 51 West 52nd Street in Midtown Manhattan, New York City. A&E Television Networks Headquarters is located at 235 East 45th Street, New York, NY. The Lifetime TV Network is headquartered in New York City. And Discovery is also headquartered in New York. (*see* Amended Complaint, Exhibit-308).

5. Regarding Mr. Abraham, Defendants' try to argue that he is not related to this complaint, but Mr. Abraham is the head of distribution at Breakthrough Entertainment and works closely with defendant Ira Levy, therefore it is proper to introduce that, by Mr. Abraham doing business with New York companies on behalf of Breakthrough Entertainment, it is proper to include this information and ask for fact discovery to learn the details of any business dealings Breakthrough Entertainment has in New York.

6. This Court has subject matter jurisdiction over plaintiffs' claims for copyright infringement pursuant to 28 U.S.C. §1331 and §1332. The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

7.     This Court has supplemental jurisdiction pursuant to § 28 U.S.C. 1367 because plaintiffs' tortious interference claims are so closely related to plaintiffs' copyright infringement claims such that they form part of the same case or controversy. Plaintiffs tortious interference claim forms part of the same case or controversy because Defendants' intentionally, and in bad faith, endeavored to further their underlying copyright infringement of the Bishop Sheen Project by using defamatory and libelous statements to prevent plaintiffs, the true owners of the Bishop Sheen Project and all materials derived there from, from developing their script into an actual production.

8.     Additionally, Venue is proper in this district pursuant to 28 U.S.C. §1391(B)(2) because a significant portion of the claim occurred in the Southern District of New York, because all legal business dealings during the term of the option agreement between Plaintiffs and Defendants happened through Plaintiffs' entertainment lawyer Joshua Sandler, whose office is in New York, therefore the Defendants' second motion to dismiss should be denied.

9.     Furthermore, Defendants cite *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), stating: "Fed. R. Civ. P. 12(b)(6) nonetheless mandates dismissal of a cause of action if it does not contain "enough facts to state a claim to relief that is plausible on its face."

10.    Defendants argument (re: *Bell Atl. Corp. v. Twombly)* is improper based on the facts stated in the Plaintiffs' Amended Complaint, which are presented with clear concise detail that support unequivocally cause to have Defendants' second motion to dismiss be denied, and move into formal discovery.

11.    Defendants then cite *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), stating that: "Mere conclusory averments are insufficient to meet this pleading threshold; rather, a claim must be supported by specific factual allegations, which if accepted as true, are sufficient to support the accusation's plausibility."

12.    However the Defendants' arguments are again wholly improper by virtue of the compelling evidence presented in Plaintiffs' Amended Complaint. *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) is also an improper argument because in that case there was no contract which stated clear and specific details defining the relationship between Plaintiff (Iqbal) and Defendants in the case.

13. Moreover, Plaintiff's Amended Complaint clearly establishes the terms of ownership over the Sheen Series, the nature of their relationship with Defendants', and the contractual binding arrangements that detail what was to take place during the term of contract, and what happens upon reversion. Defendants' fail to show any connection whatsoever between the cases they cite in regards to the clearly defined and contractual relationship, and ownership rights Plaintiffs have clearly stated in the Amended Complaint (*see* Amended Complaint p. 1, paragraph 1).

14. Defendants' arguments re: *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) are also wholly improper according to Plaintiffs' Amended Complaint (see Amended Complaint p.6 paragraph 15) where Plaintiffs cite two articles that reveal Defendants business dealings in New York, to be fact, and compelling enough to warrant denial of Defendants' second motion to dismiss.

15. It should also be noted that the venue is proper in this district pursuant to 28 U.S.C. §1391(B)(2) because a significant portion of the claim occurred in the Southern District of New York, including the defamatory and libelous letter sent by Defendants to the Sheen Center which caused Plaintiffs' contract with Sheen Center to be terminated due to Defendants threat of litigation, which is also libel.

16. Regarding general jurisdiction in the State of New York, Defendants cite *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir. 2017, and *Schultz v. Safra Nat'l Bank of N.Y.*, 377 Fed. Appx. 101, 102 (2d Cir. 2010, quoting, "For a plaintiff to demonstrate personal jurisdiction over a defendant under New York state law, the plaintiff must show 'either that the defendant was 'present' and 'doing business' in New York within the meaning of [CPLR] § 301, [general jurisdiction], or that the defendant committed acts within the scope of New York's long-arm statute, [CPLR] § 302, [specific jurisdiction]."

17.     The Amended Complaint the Plaintiffs have established compelling evidence that support the claim that the Defendants committed acts within the scope of New York's long-arm statute. Therefore, the Defendants' second motion to dismiss should be denied on these grounds as well. (*see* paragraph 3 of this document)

18.     The Defendants go on to further argue, citing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014) emphasizing that Defendants are not subject to general jurisdiction in the State of New York.

19.     The Defendants go on to cite *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134- 35 (2d Cir. 2014), stating that: "finding no general jurisdiction over foreign corporation following the Supreme Court's precedent in Daimler"

20.     This is improper for several reasons. Number 1, *Gucci Am., Inc. v. Weixing Li*, ruling was rendered after discovery. Currently Defendants claim they do not do business in the State of New York. When considering a motion to dismiss, a court should accept the [Plaintiffs] facts pleaded in the [Amended] complaint as true. Upon discovery we can address the claim that the Defendant does not do business in the State of New York.

21.     The Plaintiffs have provided compelling evidence revealing the Defendants copyright violation. At the minimum, State law claims that are equivalent to copyright infringement claims can be completely preempted by the Copyright Act and removed to federal court even if they do not state a federal claim (*Ritchie*, 395 F.3d at 286-87 2007). The Plaintiffs produce compelling evidence to support The Federal Question, and compelling evidence to support malicious behavior from the Defendants, that occurred in the State of New York, when they mailed a libelous and threatening letter to the Sheen Center, as clearly defined in the Plaintiffs' Amended Complaint (*see* Amended Complaint p. 2, paragraphs 5 and 6, and Exhibit A).

22.     The Defendants continue their argument citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012), within the context that, "C.P.L.R. § 302(a)(1) confers

specific jurisdiction when a defendant transacts business in New York, but only where that transaction has an "'articulable nexus, or a substantial relationship,' with the claims asserted."

23. The Defendants seek to dismiss in pretrial on claims made in their second motion to dismiss, that the Defendants do not do business in the State of New York. However, while the court should consider the complaints set forth by the Plaintiffs to be true, Defendants' claims should be verified in fact discovery. Therefore, a motion to move to fact discovery is appropriate to properly address all the Defendants' claims.

24. The Defendants further bend legal precedent by citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007), specifically stating that, "in cases where the plaintiff has brought a defamation action based on letters the defendant sent into New York from outside the state, New York courts have concluded that the act of sending the letters into the state does not alone amount to a transaction of business within the state under Section 302(a)(1). They then go on to further bend the understanding of president by citing *Giannetta v. Johnson*, No. 20 Civ. 9016, 2021 WL 2593305, *Pontarelli v. Shapero*, 231 A.D.2d 407, 410-11, where the main argument is that the letter sent in these cases, "did not constitute transaction of business in the state for purposes of section 302(a)(1)."

25. Again, these attempts by the Defendants to bend the legal precedent to fit their argument are improper. Plaintiffs request formal discovery at which time Defendants claim that they, "do not do business in the State of New York" can be determined to be factual or not. It is clear they Defendants did send a libelous and threatening letter to the Sheen Center in the State of New York, and the Plaintiffs have presented compelling evidence towards the Federal Question and other counts in the Amended Complaint that warrant formal discovery.

26. The Defendants continue their bending of legal precedent by citing *Symmetra Pty Ltd. v. Human Facets, LLC*, 12 Civ. 8857, 2013 WL 2896876, at *6 n.74, and Cantor Fitzgerald, L.P. v. Peaslee, 88 F.3d 152, 157 (2d Cir. 1996, "[C]laims of injurious falsehood and tortious interference with prospective economic advantage were subject to defamation exception of sections 302(a)(2)...because the entire complaint sounded in defamation.," and *Jolivet v. Crocker*,

859 F. Supp. 62, 65 (E.D.N.Y. 1994), "in an attempt to circumvent this statute, [Plaintiff] has labelled his claims for relief as 'libel' and 'tortious interference with a contractual relationship," where the Defendants argue, "these claims are based on the alleged defamatory letter, and thus § 302(a)(3) cannot serve to supply a basis for personal jurisdiction."

27. Defendants claim "copyright" ownership of materials that are solely derivative of the Plaintiffs' copyright and subject not only to Copyright Law, but contractually bound by covenants and terms within the option agreement between Plaintiffs and Defendants. Defendants' willful infringement is compelling enough in the letter alone to warrant moving to formal discovery.

28. Furthermore, any and all correspondence, negotiation and execution of the original Option Agreement (dated Sept 1, 2016) between Defendants and Plaintiffs took place via Plaintiffs' contract representative, Joshua Sandler, of Gray Krauss Stratford Sandler Des Roches, LLP, which is a business located in New York at 207 West 25th St. Suite 600, New York, NY 10001.

29. Plaintiffs have established a prima facie case of infringement by showing that a Defendant copied Plaintiffs' protected work and that this resulted in the production of a substantially similar work (Arnstein v. Porter 154 F.2d 464 (2d Cir. 1946); see NIMMER supra note 13, at § 13.03).

30. Under the fault liability rule, it is revealed that Defendants' conduct caused a harmful outcome, therefore Defendants are at fault for the outcome. Defendants' fault can is established in two ways (See e.g. PETER CANE, THE ANATOMY OF TORT LAW 36 (Hart Publishing, 1997); JULES COLEMAN, RISKS AND WRONGS 217 (Oxford University Press, 2002)), where Defendant is at fault by acting with a culpable state of mind. For example, a defendant is at fault for intentionally causing harm to another, which Plaintiffs clearly explain in the Amended Complaint. Secondly, Defendant is at fault because Defendants' actions fail to comply with a standard of conduct (See e.g. Sony Corp. of Am. Universal City Studios, Inc., 464 U.S. 417, 439 (1984); Cable/Home Communications Corp. v. Network Prods., Inc. 902 F.2d 829, 845-846 (11th

Cir. 1990)) where Defendant's risk taking was unreasonable and represents objective failure to live up to a standard that society expects of everyone.

31. Additionally Defendants cite *In re Roman Cath. Diocese of Albany, N.Y., Inc.,* 745 F.3d 30, 41 (2d Cir. 2014), "jurisdiction over foreign defendant did not comport with due process where it operated no office or facility and had no sales in the forum, and the percentage of its contacts with forum were trivial"

32. The court cannot know the true scope of the Defendants' business dealings in the State of New York without fact discovery. The Defense is requesting in their motion to dismiss that the court should simply take their word for it, but that is improper and does not comport with due process, therefore we ask to move to fact discovery on the grounds that the Plaintiffs' complaint should be considered as true unless proven otherwise in a court of law. Also, throughout the span of COVID many hearings have happened virtually, which satisfies Defendants' concern of "hauling" persons to the State of New York.

33. It is important to address that this Court has supplemental jurisdiction pursuant to § 28 U.S.C. 1367 because plaintiffs' tortious interference claims are so closely related to plaintiffs' copyright infringement claims such that they form part of the same case or controversy. Plaintiffs tortious interference claim forms part of the same case or controversy because Defendants' intentionally, and in bad faith, endeavored to further their underlying copyright infringement of the Bishop Sheen Project by using defamatory and libelous statements to prevent plaintiffs, the true owners of the Bishop Sheen Project and all materials derived there from, from developing their script into an actual production.

34. Regarding Plaintiffs' copyright complaint, Defendants go to great length to bend the facts to fit their narrative quoting, "to state a claim for copyright infringement, Plaintiffs must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original," citing, *Crane v. Poetic Prods. Ltd.*, 593 F. Supp. 2d 585, 590 (S.D.N.Y.), *aff'd*, stating, "Despite the length of their Complaint and inclusion of exhibits, Plaintiffs fail to allege these basic elements."

35.     Both arguments made by the Defendants in the statements above fail. Plaintiffs' show official copyright documents, with copyright number, which is enough to prove copyright ownership of the materials in question (*see* Amended Complaint p. 1, paragraph 1). The Defendants may request the contents of each copyright submission in fact discovery. The Defendants further lean on precedent citing *Fourth Estate Pub. Benefit Corp. v. Wall- Street.com, LLC,* 139 S. Ct. 881 (2019), which also fails. The Defendants are welcome to request the full content of Plaintiffs' copyrighted materials through fact discovery.

36.     Furthermore, Defendants try over and over again to lean on historical elements of a historical drama as evidence that Plaintiffs have no original material. The Defendants argument is naive to the fact that Plaintiffs' original work is a historical dramatic retelling, which includes historical elements and dramatic license, for each scene. Every element of the Plaintiffs' treatment and story arc, while paying close attention to historical elements, is in fact original to the Plaintiffs' creative license, in ideas, concepts, character studies, dialog, scene detail - the whole world is unique from history and leans heavily on dramatic license. The Plaintiffs' copyrighted material originated from their creative minds.

37.     There are many examples of how Defendants' "Fraser" rewrite, a derivative of Plaintiffs' copyrighted materials, and has pulled directly from Plaintiffs' copyrighted materials; that are clearly cited in Plaintiffs' Amended Complaint, which Plaintiffs humbly ask the court to review in detail. Here are a few additional examples:

    A.      Defendants' directly lift the storytelling convention of starting the story with an aging Bishop Sheen, then travel back in time to explore his life.

    B.      Defendants' directly lift the storytelling convention that Cardinal Spellman and Hoover have partnered in political ambition.

    C.      Defendants' directly lift the storytelling convention by planting the seeds for rivalry between Bishop Sheen and Cardinal Spellman, which are of creative license established by the Plaintiffs.

38.     The Defendants fail to prove in any way that Plaintiffs' original work is merely historical reference and research, which is essentially their argument, and should be dismissed as improper. The Defendants go to great lengths to disprove how closely related the Fraser Materials are to the Plaintiffs copyrighted materials and fail at every attempt. The fact is, the dramatic retelling of historical events in the Fraser rewrite all originate from Plaintiffs' copyrighted materials and the Defendants rewrite is derivative of Plaintiffs' copyrighted materials, citing evidence of such at many points in the Amended Complaint.

39.     Defendants' argument again fails when they cite *Corbello v. Valli*, 974 F.3d 965 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2856 (2021), because their infringement case is completely different than what is being argued here. In *Corbello v. Valli*, there was no contract between the two parties which defined the nature of their business relationship, copyright ownership, and what happens upon reversion at term of contract. Plaintiffs and Defendants do have a contract with covenants that explicitly illustrate what happens to the Plaintiffs' materials upon reversion, and what rights the Defendants' have with regards to the rewrite performed during the term of contract, where the Defendants' can sell the Plaintiffs the rewrite but can do nothing more with it, and the Plaintiffs are free to pursue their creative efforts with regard to the Sheen Series without any further obligation to Defendants (*see* Amended Complaint p 10, paragraph 40, and Exhibit 2, paragraph 5).

40.     Defendants are bound by covenants within the option agreement they signed with Plaintiffs which prove how ownership reverts back to Plaintiffs, the true copyright owners, and explains the very limited nature of what the defendants can do with the Fraser rewrite performed during the terms of their option agreement with the Plaintiffs (*see* Amended Complaint p 10, paragraph 40, and Exhibit 2, paragraph 5).

41.     The Defendants go on to cite *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 978 (2d Cir. 1980, *Tabachnik v. Dorsey*, 257 F. App'x 409, 410 (2d Cir. 2007) in an effort to further bend legal precedent to fit their argument, mainly that, "Plaintiffs identify only "unprotectable

historical fact" they claim to have shared with Fraser and not any protectable expression that Fraser allegedly copied."

42. Defendants fail on each point above or are intentionally being negligent in regards to the nature of dramatic retelling of historic events. Each story element in the Plaintiffs' copyrighted treatment and scripts are original works that take place in a historical setting but are 100% unique works of dramatization, not factual historical events, which is the true nature of dramatic retelling. The same can be said for the Fraser Materials, Plaintiffs have proven that the Fraser Materials and Fraser rewrite are derivative of Plaintiffs' copyrighted materials.

43. Finally, the Defendants make an egregious claim when they state, "Accordingly, Breakthrough had the contractual right to create, and, after the expiration of the Option, to exploit the Fraser Materials." This is completely false.

44. In reality the provisions of the Option agreement between the Plaintiff and Defendants prove this statement categorically false and the Defendants' second motion to dismiss should be denied on grounds that they are making false statements to support their argument intentionally (*see* Amended Complaint p 10, paragraph 40, and Exhibit 2, paragraph 5).

45. The false statements are ongoing over the last several pages of the Defendants' second motion to dismiss, and frankly an insult to the court, that the Defendants would go to such lengths to bend legal precedent, make false statements, lie, and do everything in their power to avoid the long reach of justice in this matter. We humbly ask the court to move to formal discovery so that we can put to rest the Defendants' false, defamatory, and libelous claims, and to prove their infringement, tortious interference, and every count in the Amended Complaint.