UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SEAN P. FAHEY and DIETERICH GRAY,

                                    Plaintiffs,

                    -v-

BREAKTHROUGH FILMS & TELEVISION INC.,
BREAKTHROUGH ENTERTAINMENT, IRA LEVY, and
LAUREN LEINBURD,

                                    Defendants.

---

21 Civ. 3208 (PAE) (SLC)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion to dismiss this case, which brings copyright infringement and defamation claims, for lack of personal jurisdiction. On September 30, 2021, *pro se* plaintiffs Sean P. Fahey and Dieterich Gray (collectively, "Plaintiffs") filed an amended complaint against defendants Breakthrough Films & Television, Inc. ("BFTV"), Breakthrough Entertainment ("BE"), Ira Levy, and Lauren Leinburd (collectively, "Defendants"). Dkt. 28 ("AC"). On December 1, 2021, Defendants moved to dismiss for lack of personal jurisdiction, under Federal Rule of Civil Procedure 12(b)(2), and, alternatively, for failure to state a claim, under Rule 12(b)(6). Dkt. 31 ("Motion"). On January 8, 2022, Plaintiffs filed an opposition, seeking, as alternatives to dismissal for want of personal jurisdiction, jurisdictional discovery or transfer to the Southern District of California. Dkt. 36.

On July 7, 2022, the Hon. Sarah L. Cave, United States Magistrate Judge, to whom this case had been referred for pretrial supervision, issued a Report and Recommendation. Dkt. 45 ("Report"). It recommended, *inter alia*, dismissal for lack of personal jurisdiction. *Id.* On July 19, 2022, Plaintiffs objected. Dkt. 46 ("Pl. Obj."). Defendants did not a file a response. For the

reasons that follow, the Court, concurring with the Report, grants the motion to dismiss for lack of personal jurisdiction.

## I.    Background

### A.    Factual Background

The Court adopts the Report's account of the facts and procedural history. The following summary captures the limited facts necessary to assess the issues presented.[1]

#### 1.    The Parties

Plaintiffs allege that they are television writers and owners of the copyrights for "A Life Worth Living" and "Life is Worth Living," a television "script/screenplay[] and series pitch" for "a multi-episode historical dramatic TV series" set in the 1950s and focused on the life of Bishop Fulton J. Sheen ("the Series"). AC at 4, 6. As described by Plaintiffs, the Series would have dramatized "the greatest untold story of the 20th century": of the "bitter feud" between "the most popular man on television, Bishop Fulton Sheen" and "the most powerful man in New York, Cardinal Francis Spellman." *Id.* at 6. Fahey is a citizen of Minnesota. Dkt. 1 at 2. Gray is a citizen of California. *Id.* at 10.

In spring 2016, Plaintiffs began "negotiating the terms of a one-year pitch option agreement" with BFTV. AC at 10. BFTV and its parent company, BE, are "incorporated under the laws of Canada and maintain[] [their] principal place of business at 35 Britain Street" in Toronto, Ontario, Canada. *Id.* at 4. Levy, BFTV's partner and executive producer, and Leinburd, its vice president and general counsel, *see id.*, also resided and worked in Toronto at

---

[1] The summary is drawn from the initial complaint, Dkt. 1, the AC, Dkt. 28, and attached exhibits, Plaintiffs' opposition to the Motion, Dkt. 36, the Report, Dkt. 45, and objections to it, Dkt. 46. The Court considers Plaintiffs' submissions, including factual allegations, with the special solicitude appropriate to *pro se* plaintiffs. For the purposes of resolving the motion to dismiss, the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of Plaintiffs. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

all relevant times. *See* Dkt. 1 at 4; *see, e.g.*, AC at Ex. 237[2] (email signature); *see also* Dkt. 33

(Ira Levy declaration).  According to a *RealScreen.com* article published in April 2015, BE

opened a New York office in early 2015.  *See* AC at 5; *id.* at Ex. 307.

### 2.    The Agreement

Plaintiffs hired entertainment lawyer Josh Sandler to represent them in negotiations

towards an agreement.  *See id.* at 12.  Thereafter, all "correspondence, negotiation and

execution" of the agreement took place via Sandler, who communicated with Plaintiffs and

Defendants remotely from his law firm's office in New York.  *See* Dkt. 36 at 11.

On September 1, 2016, Plaintiffs entered into a one-year pitch option agreement

("Agreement") with BE.  AC at 14; *see id.* at Ex. 2.  Relevant here, it granted BFTV the

"exclusive right" to pitch "a television mini-series created by [Plaintiffs]" for a 12-month period,

with a pre-expiration option to extend that period, by mutual written agreement, for another six

months.  *Id* at Ex. 2.  The Agreement also authorized BFTV "to change" Plaintiffs' pilot script

"if BFTV feels . . . that it would assist in [] development and/or licensing."  *Id.*  The Agreement

provided that, upon its expiration, BFTV would negotiate in good faith, should Plaintiffs seek to

acquire "creative materials (such as scripts or other materials)" for which BFTV had "pa[id] out

of its own pocket."  *Id.*  But, it provided, Plaintiffs had no "obligation to acquire such materials

from BFTV" and could proceed with their original materials after the Agreement's expiration,

and "neither BFTV nor any such affiliate shall make any claim with respect thereto."  *Id.*  The

Agreement included a California choice-of-law clause.  *See id.*  Pursuant to the Agreement,

BFTV hired Angus Fraser to rewrite Plaintiffs' pilot script.  *Id.* at 14.

---

[2] The AC and exhibits were filed as a single document.  Accordingly, "AC" followed by a page number refers to the AC's substance, and "AC" followed by an exhibit number refers to the corresponding exhibit.

The parties did not choose to exercise the Option Extension. *Id.* at 25. On August 31, 2017, the Agreement expired. *Id.*

### 3.    The 2020 Letter

On January 6, 2020, the Sheen Center for Thought and Culture in New York City ("Sheen Center") entered a contract with Plaintiffs to be artists in residence for spring 2020. *Id.* at 34. On February 26, 2020, the AC alleges, the Sheen Center received a letter from BFTV general counsel Leinburd ("the Letter"). *Id.* It made "defamatory and libelous claims with regard to BFTV's ownership of the 'Bishop Sheen Project'" and "threatened potential liability toward The Sheen Center." *Id.* at 25–26; *id.* at Ex. 302. According to the AC, BFTV's Letter falsely claimed that a script in development by Plaintiffs "directly lift[ed]" from BFTV-developed scripts—in particular, creative elements dramatizing the rise of Catholic power throughout the United States that BFTV employee Fraser had "brought to the project" and were "owned by Breakthrough." *Id.* at 26–27. The Letter also allegedly "libelously claim[ed]" that Fraser had added Cardinal Spellman as a character to BFTV's script, whereas in fact, Plaintiffs owned the copyright to "[a]ny story elements used by Fraser related to Spellman and his relationship to Sheen." *Id.* at 28. "Fearing litigation," the Sheen Center exercised its contract right to terminate Plaintiffs as artists in residence. *Id.* at 26.

In spring 2020, BE, through its distribution head, Nat Abraham, initiated "license commitments with major US networks and cable channels including Discovery, CBS, Lifetime, and A&E," each headquartered in New York. *Id.* at 5; *id.* at Ex. 308.

**B.     Procedural History**

**1.     Fahey and Gray's Claims and Defendants' Motion to Dismiss**

On April 13, 2021, Plaintiffs filed the original complaint. Dkt. 1.  On May 11, 2021, the case was reassigned to this Court, which, on May 12, 2021, referred it to Judge Cave for general pretrial supervision. Dkt. 8.

On August 2, 2021, Defendants moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(2) and 12(b)(6). *See* Dkt. 11, 16 (clarifying that motion was on behalf of all Defendants). On August 18, 2021, August 19, 2021, and September 13, 2021, Judge Cave granted requests by Plaintiffs to extend the deadline to amend. *See* Dkts. 23, 25, 27.  On September 30, 2021, Plaintiffs filed the AC.  It brought eight claims: federal claims for (1) copyright infringement, in violation of 17 U.S.C. § 501, and (2) misrepresentation in commercial advertising, in violation of 15 U.S.C. § 1125(43)(a), and state-law claims for (3) defamation, (4) breach of contract, (5) tortious interference with existing contract, (6) tortious interference with business relations, (7) tortious interference with prospective economic advantage, and (8) common-law unfair competition. *See* AC at 31–41.

On December 1, 2021, Defendants filed a motion to dismiss the AC ("the Motion"), Dkt. 31, and, in support, a memorandum of law, Dkt. 32, and a declaration from Ira Levy, Dkt. 33. On January 8, 2022, Plaintiffs filed a memorandum in opposition, Dkt. 36, which sought, as an alternative, jurisdictional discovery, *see id.* at 6 ¶ 4, 10 ¶ 25.  On January 24, 2022, Defendants filed a reply, Dkt. 38, and a declaration, Dkt. 37.  On February 11, 2022, this Court referred the motion to Judge Cave. Dkt. 40.  On April 20, 2022, Plaintiffs requested permission to file a sur-reply and filed their sur-reply, Dkt. 43 ("Pl. Sur-Reply"), which reiterated their request for jurisdictional discovery, *id.* 9–10, and also sought, as another alternative, transfer, *see id.* at 11–13; on April 21, 2022, Judge Cave granted leave to file the sur-reply, Dkt. 44.

### 2.    The Report and Recommendation

On July 7, 2022, Judge Cave issued the Report.  Report at 61.  It recommends that the Court find that it lacks personal jurisdiction over Defendants under New York's long-arm statute, New York Civil Practice Law and Rule ("CPLR") § 302(a).  *Id.* at 29–35.  As to Section 302(a)(1), the Report concludes that the two New York contacts that the AC identifies— (1) Plaintiffs' decision to hire a New York attorney, and (2) BFTV's 2020 Letter to the Sheen Center in New York—are insufficient to establish specific personal jurisdiction.  *See id.* at 31– 33.  As to Section 302(a)(3), the Report finds that Plaintiffs' tortious interference with contract claim sounds in defamation and, therefore, is foreclosed under the CPLR § 302(a)(3)'s explicit exemption for defamation claims.  *Id.* at 33–35.

The Report also recommends, for two reasons, denying Plaintiffs' request for jurisdictional discovery.  *Id.* at 36–38.  First, the AC does not establish a *prima facie* case of personal jurisdiction.  *Id.* at 38.  Second, the AC fails to state a claim under Rule 12(b)(6).  *Id.* For the latter reason, the Report also recommends denying Plaintiffs' request that the Court, in lieu of dismissal, transfer the case to a District where there would appear to be personal jurisdiction.  *Id.* at 39–40.

Although the Report does not recommend that the Court rule on the basis of Rule 12(b)(6), it analyzes that alternative basis for dismissal as sought by Defendants.  It finds that the AC does not allege sufficient facts to support plausible claims for breach of contract, *id.* at 50– 53, unfair competition, *id.* at 58–61, or Lanham Act violations, *id.*; that its defamation claim is time-barred, *id.* at 53–54; that its tortious interference claims duplicate its defamation claim, *id.* at 54–58; and that its copyright-infringement claim, if construed as disputing ownership, is time-barred, *id.* at 44–47, but if construed as a copyright-infringement claim and found timely, pleads a viable such claim, *see id.* at 47–50.

6

On July 19, 2022, Plaintiffs filed objections to the Report. Pl. Obj. at 1. Defendants did not respond.

## II.   Discussion

### A.   Applicable Legal Standards

#### 1.   Reports and Recommendations

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing *Wilds v. U.P.S.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, a district court will review the Report and Recommendation strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. July 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH) (GWG), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012). This is so even in the case of *pro se* plaintiffs. *See Dickerson*, 2013 WL 3199094, at *1; *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

### 2.   Motions Under 12(b)(2)

"On a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, 'the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant.'" *Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y 2017) (quoting *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Relevant here, before discovery, "a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Id.* (quoting *Ball*, 902 F.2d at 197).

A showing of personal jurisdiction "may be made through the plaintiff's 'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester*, 722 F.3d at 85 (quoting *S. New Eng. Tel.*, 624 F.3d at 138). Nevertheless, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013), *cert. denied sub nom. O'Neill, Jr. v. Al Rajhi Bank*, 573 U.S. 954 (2014).

### 3.     Motions Under 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145. That tenet, however, does not apply to legal conclusions, *see Iqbal*, 556 U.S. at 678, even where, as here, the plaintiffs proceed *pro se*, *see Harris v. Mills*, 57 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And, in deciding a motion to dismiss, the Court may consider "the complaint, the answer, [and] any written document attached to them . . . ." *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) (per curiam); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

### 4.     Review of *Pro Se* Pleadings

As to all motions, a court must construe *pro se* plaintiffs' pleadings liberally. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). "[D]ismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008)). Nonetheless, the Court's obligation "to draw the most favorable inferences" from a

complaint" does not entitle it to "invent factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

Moreover, "while a *pro se* litigant should ordinarily be afforded a substantial degree of solicitude, the exact degree thereof will depend upon a variety of factors, including, but not necessarily limited to, the specific procedural context and relevant characteristics of the particular litigant." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). Where a *pro se* plaintiff's submissions are "drafted with the substantial assistance of an attorney," the Court may withdraw that special solicitude. *Askins v. Metro. Transit Auth.*, No. 19 Civ. 4927 (GHW), 2020 WL 1082423, at *4 (S.D.N.Y. Mar. 5, 2020); *see also Littlejohn v. Consol. Edison Co. of N.Y., Inc.*, No. 18 Civ. 6336 (KPF), 2019 WL 3219454, at *1 n.1 (S.D.N.Y. July 17, 2019) (no special solicitude where briefs had been prepared with assistance of the New York Legal Assistance Group Legal Clinic for *Pro Se* Litigants in the SDNY ("the SDNY Clinic")). Ultimately, "it falls well within a district court's discretion to lessen the solicitude that would normally be afforded." *Tracy*, 623 F.3d at 102.

Here, the factual components of Plaintiffs' AC, AC at 1 n.1., and Sur-Reply, Pl. Sur-Reply at 1 n.1., are in Plaintiffs' voice. These merit special solicitude and are rightly liberally construed. In contrast, the legal arguments in Plaintiffs' sur-reply benefited from the assistance of counsel of the SDNY Clinic. *See* Pl. Sur-Reply at 1 n.1. Nonetheless, the Court will view these submissions, too, with extra solicitude.

## B.   Application

Although Plaintiffs object to the Report's bottom-line conclusion that they have not alleged facts supporting personal jurisdiction, they do not object to the Report's conclusions in the course of its analysis that they have not alleged facts showing either (1) general personal jurisdiction or (2) specific personal jurisdiction under Fed. R. Civ. P. 4(k)(2). *See* Pl. Obj.

Accordingly, the Court has reviewed those conclusions only for clear error. The Court's careful review of Judge Cave's well-reasoned analysis reveals no facial error in either.

Plaintiffs instead make four objections to the Report: that (1) the AC adequately alleged personal jurisdiction under Sections 302(a)(1) and 302(a)(3) of New York's long-arm statute, *id.* at 7–12, 12 n.3; (2) if it did not, jurisdictional discovery is warranted, *id.* at 12–14; (3) if personal jurisdiction is nonetheless found lacking, in lieu of dismissal, transfer to the United States District Court for the Southern District of California is warranted, *id.* at 14–16; and (4) to the extent the Court reaches Defendants' motion under Rule 12(b)(6), the AC alleged a copyright-infringement claim—not an ownership claim—such that this claim is not time-barred, *id.* at 2–7.

### 1.      Personal Jurisdiction

Determining whether there is personal jurisdiction over a foreign defendant in a federal-question case entails a two-step inquiry. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). First, the Court looks to the law of the forum state to determine the presence of personal jurisdiction. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). Second, if jurisdiction lies, the Court considers whether the exercise of personal jurisdiction over the defendant comports with due process. *See Licci*, 732 F.3d at 168.

As the Report persuasively reasoned, the AC's claims falter at the first step. *See* Report at 29–34. For a plaintiff to establish personal jurisdiction under CPLR 302(a)(1), "two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). A claim "arises from" a particular transaction "when there is some articulable nexus between the business transacted and the claim sued upon, or when there is a substantial relationship between the transaction and the claim asserted." *Blockchange Ventures I GP, LLC v. Blockchange, Inc.*, No. 21 Civ. 891 (PAE), 2021

WL 3115437, at *5 (S.D.N.Y. July 22, 2021) (quoting *Sole Resort*, 450 F.3d at 103). "Courts

applying CPLR § 302(a)(1) . . . look at the totality of the circumstances of the party's

interactions and activities within New York to determine whether the nonresident party has

'purposefully availed [himself] of the privilege of conducting activities within New York[.]'"

*AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 331 (S.D.N.Y. 2017).

Even read generously, the AC's allegations do not support personal jurisdiction under

Section 302(a)(1). *See* Report at 31–33. The AC identifies two sets of contacts with New York.

The first involves the Agreement's formation. "[A] single transaction in New York may suffice

to invoke personal jurisdiction 'even though the defendant never enter[ed] New York, so long as

the defendant's activities here were purposeful and there is a substantial relationship between the

transaction and the claim asserted.'" *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 548 (2d Cir. 2007),

*certified question accepted sub nom. Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 838 (2007),

and *certified question answered sub nom. Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501 (2007).

Relevant factors under Section 302(a)(1) include "whether an out-of-state defendant transacts

business in New York, whether the defendant has an ongoing contractual relationship with a

New York corporation; and in cases involving a contract, whether it was negotiated or executed

in New York and what, if any, choice of law provision it contains." *AmTrust Fin.*, 260 F. Supp.

3d at 331.

Here, however, as pled, it was *Plaintiffs*' decision to hire a New York-based attorney to

negotiate the transaction with Defendants. *See* Report at 31–32 (noting the same). That act does

not show that *Defendants* purposefully availed themselves of New York's laws. *See id.* at 31;

*see, e.g., Woods v. Pettine*, No. 13 Civ. 290 (PGG), 2014 WL 292363, at *8 (S.D.N.Y. Jan. 27,

2014) ("Plaintiff's business interactions with New York are not the issue when assessing

personal jurisdiction" under Section 302(a)(1); instead, "the Court must evaluate the Defendant's activities and conduct." (internal quotation marks omitted)); *U.S. Theater Corp. v. Gunwyn/Lansburgh Ltd. P'ship*, 825 F. Supp. 594, 596 n.4, 596–97 (S.D.N.Y. 1993) (70 letters and 50 phone calls not sufficient for personal jurisdiction because defendant "did not intend to do business in New York" through communications); *cf. Barrett v. Tema Dev. (1988), Inc.*, 251 F. App'x 698, 700 (2d Cir. 2007) (unpublished) (plaintiff's conversation from New York with the defendant "concerning" the parties' contract insufficient to establish personal jurisdiction). On the contrary, although an Agreement is pled to have been entered into, the pleadings reflect that BFTV negotiated and executed it from Canada. *See* AC at Exs. at 237–38, 247 (BFTV's representatives communicating with Sandler from Canada). The Agreement also did not contain a choice-of-forum provision, let alone one favoring New York. Its choice-of-law provision favors California law. *See id.* at Ex. 2.

Plaintiffs also do not claim that Sandler negotiated the agreement or interacted with BFTV's officials in New York. *Contra PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997) (personal jurisdiction found under Section 302(a)(1) where New York attorney of non-domiciliary plaintiff "frequently" contacted defendant at defendant's law firm's New York City office in connection with the disputed investment). The AC does not allege any facts that BFTV's New York office had any involvement in negotiating or implementing the Agreement. *See* Pl. Sur-Reply at 7 ("[D]efendants . . . while they conducted these key negotiations, [were] operating from Breakthrough's Canadian headquarters.").

The sole nexus between the Agreement and New York is that BFTV emailed it to Plaintiffs via their New York attorney, Sanders. *See* AC at Ex. 2; Report at 32. But "New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of

defendant's communication from another locale with a party in New York." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128–29 (2d Cir. 2013) (citation omitted); *V Cars, LLC v. Israel Corp.*, 902 F. Supp. 2d 349, 363 (S.D.N.Y. 2012) ("[P]hone calls and emails to and from New York are not sufficient to justify the exercise of personal jurisdiction" where "the undisputed facts demonstrate that the defendant 'did not seek out a New York forum.'"); *Aquiline Cap. Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378, 388 (S.D.N.Y. 2012) (same) (collecting cases); *Lawrence Wisser & Co. v. Slender You, Inc.* 695 F. Supp. 1560, 1562 (S.D.N.Y. 1988) ("approximately 80 telephone calls and 30 faxes," alone, held insufficient to constitute "transacting business" within Section 302(a)(1)).

The Report was also right to conclude that the AC's allegations about the 2020 Letter that Defendants allegedly sent to the Sheen Center are insufficient to establish personal jurisdiction. *Compare* Pl. Sur-Reply at 8–9, *with* Report at 32–33. That communication is the foundation for the AC's defamation claim; it has no bearing on the copyright claim. And in cases "where the defendants' out-of-state conduct involved defamatory statements projected into New York and targeting New Yorkers," New York courts have found jurisdiction only "where the conduct also included something more." *Best Van Lines*, 490 F.3d at 249. To satisfy Section 302(a)(1) in connection with such a claim, a plaintiff must also allege "an underlying *business transaction* on which to establish specific jurisdiction[.]" *Giannetta v. Johnson*, No. 20 Civ. 9016 (PAE), 2021 WL 2593305, at *8 (S.D.N.Y. June 24, 2021) (emphasis in original). The AC does not do so. It does not identify any BFTV business transaction in New York, or indeed any contact on BFTV's part with any connection to these events, other than the Letter itself.[3] *See id.* ("New York courts

---

[3] Plaintiffs note that BFTV had license agreements with New York networks, *see* AC at Ex. 308, but do not allege any connection between these and BFTV's Letter to the Sheen Center, *see id.* at 5.

have found 'that they lacked jurisdiction over out-of-state defendants accused of having uttered defamatory falsehoods where the defamation claim did not arise from the defendants' specific business transactions in New York.'") (collecting cases); *Morsy v. Pal-Tech, Inc.*, No. 07 Civ. 2143 (PKL), 2008 WL 3200165, at *5 (S.D.N.Y. Aug. 7, 2008) (sending multiple defamatory letters into New York was not sufficient for personal jurisdiction); *cf. PDK Labs, Inc.*, 103 F.3d at 1009 (single letter sent to New York "in an attempt to settle legal claims" insufficient for personal jurisdiction). *See generally Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 765–66 (2d Cir. 1983) (sending a cease-and-desist letter alleging infringement and threatening enforcement in New York was insufficient for personal jurisdiction under Section 302(a)(1)) (collecting cases); *DH Servs., LLC v. Positive Impact, Inc.*, No. 12 Civ. 6153 (RA), 2014 WL 496875, at *5 (S.D.N.Y. Feb. 5, 2014) (sending cease-and-desist letter that threatened legal action in New York and related phone call to New York were insufficient for jurisdiction under Section 302(a)(1)).

Finally, Plaintiffs' Objections reiterate—in a footnote—the argument they made in a sur-reply that personal jurisdiction may be founded upon Section 302(a)(3). *See* Pl. Obj. at 12 n.3; Pl. Sur-Reply at 9 n.6. Notwithstanding its cursory articulation, the Court considers this argument *de novo*. *But see Dickerson*, 2013 WL 3199094, at *1 (clear error review warranted where a *pro se* party merely reiterates original argument or makes only conclusory or general objections). As the Report recognized, to establish personal jurisdiction under Section 302(a)(3), a plaintiff must satisfactorily allege that the defendant committed a tortious act outside of New York and that the defendants caused injury in New York, *see* Report at 33–35; *id.* at 33 (citing *Snowbridge Advisors LLC v. ESO Cap. Partners UK LLP*, No. 21 Civ. 9086 (JSR), 2022 WL 667606, at *7 (S.D.N.Y. Mar. 7, 2022)), and Section 302(a)(3) explicitly exempts causes of action for the tort of defamation from its scope, *see* C.P.L.R. § 302(a)(3) (courts may exercise

personal jurisdiction over a non-domiciliary who "commits a tortious act without the state

causing injury to person . . . within the state, except as to a cause of action for defamation of

character arising from the act"); *Best Van Lines*, 490 F.3d at 244–45. Here, Plaintiffs' claims

arising from the Letter unavoidably sound in defamation alone. Plaintiffs "'cannot evade [the

bar to defamation claims] by recasting their defamation claims as other torts.'" *Giannetta*, 2021

WL 2593305, at *9 (alterations in original) (quoting *Shamoun v. Mushlin*, No. 12 Civ. 3541

(AJN), 2014 WL 12776779, at *4 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks omitted));

*see* Report at 32–33. Accordingly, Section 302(a)(3) cannot supply a basis for personal

jurisdiction. *See, e.g.*, *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996)

(determining jurisdiction lacking under Section 302(a)(3) "because the entire complaint sounds

in defamation"); *Common Cents Distributors, LLC v. CURLS Beauty Brands, LLC*, No. 20 Civ.

10369 (CM), 2021 WL 4226182, at *5 (S.D.N.Y. Sept. 15, 2021) (citing *Cantor* to conclude the

same); *Jolivet v. Crocker*, 859 F. Supp. 62, 65 (E.D.N.Y. 1994) ("[Because] these claims are

based on the alleged defamatory letter, . . . § 302(a)(3) cannot serve to supply a basis for personal

jurisdiction.").

The Report thus correctly found personal jurisdiction lacking.

## 2.    Jurisdictional Discovery

Plaintiffs next object to the Report's recommendation that, if personal jurisdiction is not

found, the Court should not order jurisdictional discovery. *See* Report at 38. They propose to

undertake discovery to determine whether BFTV's New York office was "involved in

discussing, developing, or pitching [their] materials." Pl. Sur-Reply at 11.

Where a plaintiff has not made a *prima facie* showing of personal jurisdiction, "a court

may still order discovery, in its discretion, when it concludes that the plaintiff may be able to

establish jurisdiction if given the opportunity to develop a full factual record." *Piotrowicz v.*

*Techtronic Indus. N. Am., Inc.*, No. 19 Civ. 11522 (KPF), 2021 WL 1721709, at *3 (S.D.N.Y. Apr. 30, 2021) (quoting *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014)). Here, however, the Court, heeding the Report, declines to exercise its discretion to authorize such discovery. *See* Report at 38. There are three independent bases for this ruling.

First, the AC does not allege any facts—nor do the many 308 exhibits Plaintiffs have furnished the Court suggest—that BFTV's New York office participated in any way in the Agreement's formation or performance, or indeed in any of BFTV's dealings with Plaintiffs. There is thus no concrete factual predicate for the discovery expedition Plaintiffs envision. The Court "cannot invent factual allegations that [plaintiffs] ha[ve] not pled." *Chavis*, 618 F.3d at 170.

Second, even assuming that Plaintiffs' speculation were borne out that BFTV's New York office had some involvement in the performance of the Agreement, this would not establish personal jurisdiction under Section 302(a)(1). And "a court is not obligated to subject a foreign corporation to discovery where the allegations of jurisdictional facts, construed most favorably in the plaintiff's favor, fail to state a basis for the exercise of jurisdiction or where a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction." *Daventree Ltd. v. Republic of Azer.*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185–86 (2d Cir. 1998)). Critically, Plaintiffs' claims could not "arise from" from the performance of the Agreement that they posit may have occurred in BFTV's New York office, for example, the "discussing, developing, or pitching" of the Series. Pl. Sur-Reply at 11; *Best Van Lines*, 490 F.3d at 246 (discussing Section 302(a)(1)'s two prongs). For claims to "arise from" a defendant's New York contacts within the meaning of Section 302(a)(1), there must instead be "a substantial relationship between the transaction and

the claim asserted" that is not "merely coincidental." *Best Van Lines*, 490 F.3d at 249 (internal

quotation marks omitted). Here, Plaintiffs' claims—including breach of copyright, breach of

contract, tortious interference, unfair competition, and violations of the Lanham Act—all turn on

alleged malfeasance by BFTV *after* the Agreement expired. *See, e.g.,* AC at 31–32, 33–41.

They therefore cannot logically arise from BFTV's performance of the Agreement between

September 1, 2016 and August 31, 2017. *See, e.g., Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d

118, 127 (S.D.N.Y. 2021) (determining plaintiff failed to make a *prima facie* jurisdictional

showing under Section 302(a)(1) because he "has not shown—and cannot show—that his

claims" related to defendant's New York contacts); *Pettine*, 2014 WL 292363, at *9 (same);

*Levans v. Delta Airlines, Inc.*, 988 F. Supp. 2d 330, 335–36 (E.D.N.Y. 2013) (same); *Royalty*

*Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 422 (S.D.N.Y. 2009) (determining that

plaintiff failed to make a *prima facie* jurisdictional case under Section 302(a)(1) because "the

[alleged] transaction has no specific connection to this litigation" and "[t]hat it took place in New

York is 'merely coincidental' and of no relevance to the facts or legal issues underlying this

suit").

Only one of Plaintiffs' theories—the breach-of-contract theory that BFTV "broke[] the

terms of the [] Agreement by never actually pitching materials to studios or networks with the

Plaintiffs," AC at 33—alleges a wrong that occurred during the Agreement's pendency. But that

claim contradicts the theory on which Plaintiffs seek jurisdictional discovery, insofar as it

presupposes that BFTV, rather than performing through its New York Office, breached by *not*

working on the project as contractually required. *See Adeniji v. N.Y. State Off. of State*

*Comptroller*, No. 18 Civ. 0761 (PAE) (BCM), 2019 WL 4171033, at *2–3 (S.D.N.Y. Sept. 3,

2019) ("[F]actual allegations made in a *pro se* plaintiff's opposition papers . . . may be

considered 'as supplementing the Complaint, *at least to the extent they are consistent with the allegations* in the Complaint. . . . [T]he Court need not accept allegations that are 'contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint.'" (emphasis added)).

Third, the surrounding circumstances reinforce that it is highly unlikely that discovery would change the personal jurisdiction outcome. *See Van Elzen v. Glob. Strategy Grp., LLC*, No. 20 Civ. 3541 (JPO), 2021 WL 185328, at *3 (S.D.N.Y. Jan. 19, 2021) (considering totality of circumstances in resolving such an application). Even if it were shown that BFTV's New York office had had a hand in promoting Plaintiffs' proposed Series, that would not alter where the Agreement had been negotiated or executed. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (considering, in cases involving a contract, whether it was negotiated or executed in New York); *Van Elzen*, 2021 WL 185328, at *2 (same); *AmTrust Fin.*, 260 F. Supp. 3d at 331 (same). Nor would it appear likely to bear consequentially on Plaintiffs' various theories of post-expiration wrongs. That the parties chose California—not New York—law to govern may also supply a degree of confirmation that discovery would not likely reveal facts supporting personal jurisdiction in New York. *See Sunward Elecs.*, 362 F.3d at 23 ("A choice of law clause is a significant factor in a personal jurisdiction analysis[.]"). The Court declines to "allow plaintiff[s] to engage in an unfounded fishing expedition for jurisdictional facts." *Wallert v. Atlan*, 141 F. Supp. 3d 258, 287 (S.D.N.Y. 2015) (citation omitted) (denying jurisdictional discovery).

### 3.    Transfer

As an alternative to dismissal for want of personal jurisdiction, Plaintiffs requested the Court to transfer this matter to the United States District Court for the Southern District of

California, on the grounds that personal jurisdiction over Defendants would appear to exist there. *See* Pl. Sur-Reply at 11–13. They object to the Report's recommendation not to do so.

"A district court may transfer a case . . . only when the transfer is 'in the interest of justice.'" *Paroni v. Gen. Elec. UK Holdings Ltd.*, No. 19 Civ. 1034 (PAE), 2021 WL 5154111, at *1 (S.D.N.Y. Nov. 5, 2021) (quoting *Corke v. Sameiet M.S. Song of Nor.*, 572 F.2d 77, 80 (2d Cir. 1978)). The Second Circuit has identified several inquiries relevant to this test. First, whether transfer would "enable [plaintiff] to obtain personal jurisdiction over some or all of the defendants." *Id.* (alteration in original) (citation omitted). Second, whether transfer would alleviate a procedural obstacle, such as allowing plaintiff to toll a statute of limitation that would otherwise bar her from refiling. *Id.* Third, whether transfer would severely prejudice the defendant, *id.*, and, fourth, whether the merits of the case are "clearly doomed," *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005). "Courts evaluating such factors enjoy considerable discretion in deciding whether to transfer a case in the interest of justice," *Paroni*, 2021 WL 5154111, at *1, and "the moving party must make a clear and convincing showing that transfer is proper" to prevail, *see E. Mishan & Sons, Inc. v. Smart & Eazy Corp.*, No. 18 Civ. 3217 (PAE), 2018 WL 6528496, at *9 (S.D.N.Y. Dec. 12, 2018) (internal quotation marks omitted).

Here, two factors weigh strongly against transfer. First, although the Court, given the dismissal on jurisdictional grounds, does not have occasion to resolve whether the AC states a claim, the Report set out a reasoned analysis why, were the Court to reach that issue, seven of plaintiff's eight claims should be held to fail Rule 12(b)(6). *See* Report at 50–61. Tellingly, Plaintiffs did not object to that recommendation. *See* Pl. Obj. 2–7. Second, as the Report explained, the eighth claim is susceptible to a potentially meritorious motion to dismiss based on

untimeliness, if that claim is ultimately construed as an ownership claim that accrued more than three years before the filing of this action, as opposed to an infringement claim that accrued more recently. *See* Report at 40–47; 17 U.S.C. § 507(b) (Copyright Act's three-year statute of limitations); *see, e.g., Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 730–32 (S.D.N.Y. 2021) (determining that plaintiff's copyright-infringement claim was an ownership claim because it focused on "competing assertions of ownership rights," and dismissing plaintiff's claim as untimely); *Charles v. Seinfeld*, 410 F. Supp. 3d 656, 659–61 (S.D.N.Y. 2019) (same); *Big East Ent., Inc. v. Zomba Enters.*, 453 F. Supp. 2d 788, 796 (S.D.N.Y. 2006) (finding plaintiff's infringement claim time-barred because it was based "entirely upon its alleged ownership of [musical] compositions," which plaintiff had failed to litigate for over a decade); *Barksdale v. Robinson*, 211 F.R.D. 240, 246 (S.D.N.Y. 2002) ("When the gravamen of a plaintiff's copyright claims is ownership, and not infringement, the infringement claims are barred if the ownership claim is time-barred."). To the extent this claim may be time-barred, transfer to another District would not cure that deficiency.

The Court therefore will dismiss the case for want of personal jurisdiction, rather than transfer it and burden the docket of a sister court. The dismissal, being jurisdictional in nature, will be without prejudice. *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) ("A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum . . . ."); *accord. Grand Rodosi, Inc. v. Zhoushan IMC-YY Shipyard & Eng'g Co.*, No. 09 Civ. 3875 (JSR), 2009 WL 4257639, at *1 (S.D.N.Y. Nov. 30, 2009) (quoting *Arrowsmith* to dismiss for lack of personal jurisdiction without prejudice); *Nelson v. Mass Gen. Hosp.*, No. 04 Civ. 5382 (CM), 2007 WL 2781241, at *2 (S.D.N.Y Sept. 20, 2007) (dismissing for lack of personal jurisdiction, without prejudice), *aff'd* 299 F. App'x 78 (2d Cir.

2008) (summary order). Should Plaintiffs determine that they have a viable and timely claim to bring in a venue in which there is personal jurisdiction over Defendants, this decision will not preclude them from doing so.

## CONCLUSION

For the foregoing reasons, the Court adopts Judge Cave's perceptive and convincing Report and Recommendation insofar as it finds a lack of personal jurisdiction over Defendants, and grants Defendants' motion to dismiss under Rule 12(b)(2). This dismissal is without prejudice. The Court denies Plaintiffs' requests for jurisdictional discovery and for transfer to another District.

The Clerk of the Court is respectfully directed to terminate all pending motions, to mail a copy of this order to Plaintiffs at their address of record, and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: September 29, 2022
      New York, New York